UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JERRY CANKAT,                                    :
                                                 :         REPORT &
                           Plaintiff,   :         RECOMMENDATION
                                                 :         15-CV-4730 (FB) (SMG)
       -against-                                 :
                                                 :
NOISETTE CAFÉ INC. and 24-21 STEINWAY            :
STREET REALTY CORP.,                             :
                                                 :
                         Defendants.    :
------------------------------------------------------------------- x
GOLD, S., U.S. Magistrate Judge:

## BACKGROUND

On August 12, 2015, Plaintiff Jerry Cankat ("Cankat") filed this action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA"). Complaint ¶ 1, Docket Entry 1 ("Compl."). Plaintiff sought declaratory and injunctive relief, as well as attorneys' fees, costs, and litigation expenses, against defendants Noisette Café Inc. ("Noisette Café") and 24-21 Steinway Street Realty Corp. ("Steinway") (collectively, "defendants").

By Report and Recommendation, dated February 8, 2016, the Court recommended that the case be dismissed for failure to prosecute unless plaintiff filed a motion for entry of default or otherwise explained why he failed to comply with court orders. Docket Entry 7. Upon plaintiff's subsequent application, and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of Court noted the default of defendants on May 3, 2016. Due to plaintiff's repeated failure to comply with multiple court orders, the Honorable Frederic Block issued an order, dated July 27, 2016, dismissing the case for failure to prosecute. On August 1, 2016, plaintiff filed the pending motion for entry of a default judgment, which, after re-opening

the case, the Honorable Frederic Block referred to me for a recommendation on whether liability should be imposed and, if so, what relief, if any, should be awarded. Order of Aug. 2, 2016.

## DISCUSSION

*A. Liability*

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment. *See Shariff v. Beach 90th Street Realty Corp.*, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, once a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment against that particular defendant. Fed. R. Civ. P. 55(b)(2). On a motion for default judgment, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Allstate Ins. Co. v. Mirvis*, 2015 WL 1539671, at *2 (E.D.N.Y. Mar. 31, 2015). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *accord Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Plaintiff has established the elements of liability required to state a claim pursuant to 42 U.S.C. § 12182. Section 12182 provides:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

2

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To state a claim under the statute, a plaintiff must allege that (1) he is disabled as defined by the ADA; (2) the defendant owns or operates a public accommodation; and (3) the defendant has discriminated against the plaintiff within the meaning of the ADA. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Plaintiff alleges that he suffers from "a severe case of diabetes" that "has resulted in multiple surgeries to his left leg and ultimately . . . the amputation of his right leg." Compl. ¶ 4. Accordingly, since 2010, he has been "bound to ambulate in a wheelchair." *Id.* Plaintiff is thus a disabled individual for the purposes of the ADA. *See, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, 2013 WL 867429, at *3 (E.D.N.Y. Feb. 6, 2013) (noting that people confined to wheelchairs are disabled pursuant to the terms of the ADA (citing inter alia, 42 U.S.C. § 12102)), *adopted in relevant part by* 2013 WL 867420 (Mar. 7, 2013).

Plaintiff further alleges that defendant Noisette Café, defendant Steinway's tenant, operates a "restaurant dining establishment." Compl. ¶ 3. A tenant who runs a restaurant operates a "public accommodation" within the meaning of the ADA. *See* 42 U.S.C. § 12181(7)(B) (defining a public accommodation to include a "restaurant, bar, or other establishment serving food or drink"); 42 U.S.C. § 12182(a) ( "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation*.") (emphasis added). Accordingly, the café, as well as the commercial property, fall within the scope of the ADA.

Finally, plaintiff alleges that he has attempted to enter Noisette Café but could not do so because of an architectural barrier to accessibility. Compl. ¶ 9. More specifically, plaintiff's

3

complaint identifies twenty-four (24) exterior and interior barriers to access that he claims violate the ADA's anti-discrimination provisions. *Id.* ¶ 13. In his supporting memorandum, plaintiff points to various specific violations of the 2004 ADA-ABA Accessibility Guidelines ("ADAAG") applicable to defendants' premises, as well as a list of violations outlined in a report by a "commercial site inspector." Plaintiff's Memorandum of Law at 5, Docket Entry 14 ("Pl.'s Mem."); Decl. of Jay Egilmez Ex. B, Docket Entry 14-8 ("Egilmez Decl."). Mr. Egilmez, an inspector hired by plaintiff for purposes of this litigation, asserts that he has been performing physical site inspections of commercial properties for "nearly ten years" to determine compliance with the ADA "and related regulations and architectural guidelines." Egilmez Decl. ¶ 1, Docket Entry 14-2. He claims to have visited and inspected the property located at 24-21 Steinway Street, Astoria, New York, on August 7, 2015, just days before the commencement of this action, and again on February 26, 2016. *Id.* ¶¶ 3, 4.

In his report, Mr. Egilmez has identified a total of thirty-five (35) alleged ADAAG violations, ranging from "inaccessible entrance" to "non-compliant height of coat hook exceed[ing] maximum height allowance." Egilmez Decl. Ex. B. In his declaration, Mr. Egilmez also identifies eight (8) recommended modifications that are "readily achievable" and which may be "implemented at a reasonable construction cost considering the property value as compared to the cost of said remediation efforts." Egilmez Decl. ¶¶ 5, 6. Unlawful discrimination under the ADA includes a "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, the allegations set forth in plaintiff's complaint establish defendants' liability under the ADA.

    *B. Relief*

Having established liability, plaintiff seeks injunctive relief, as well as an award of attorneys' fees, costs, and litigation expenses.

While the allegations of a complaint pertaining to liability are deemed admitted upon entry of default judgment, allegations relating to relief and damages are not. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the relief sought. *Id.* A court must ensure that there is a basis for the relief sought by a plaintiff before entering a judgment for what was demanded. *See United States v. JP Morgan Chase Bank*, 2010 WL 6634904, at *1 (E.D.N.Y. July 6, 2010) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993); *Fustok*, 873 F.2d at 40. Plaintiff has submitted declarations and supporting documentation and defendants have not submitted any opposition. I therefore conclude that a hearing on the issue of relief is unwarranted.

*1. Injunctive Relief*

Plaintiff is entitled to injunctive relief compelling defendants to remedy the architectural barriers to access that exist at their public accommodation. First, plaintiff has standing to seek injunctive relief under the ADA. To establish standing, (1) a plaintiff must allege an injury under the ADA attributable to the defendant; and (2) it must be reasonable to infer that (a) the ADA violations at defendants' place of public accommodation will persist, and (b) the plaintiff intends to return to defendants' place of public accommodation in the future. *See Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013) (citing *Camarillo v. Carrols*

*Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)); *Shalto*, 2013 WL 867420, at *3. As noted above, plaintiff alleges in his complaint that he attempted to enter defendants' commercial property but could not do so because of an unlawful architectural barrier. Compl. ¶ 9. Given the structural nature of the barrier, it is reasonable to infer that it will, absent a court order requiring remediation, persist. Finally, in a declaration submitted in support of his pending motion, plaintiff alleges that he intends to return to defendants' property and enter it once proper modifications have been made. Decl. of Jerry Cankat ¶ 5, Docket Entry 14-3 ("Cankat Decl."). Plaintiff has thus demonstrated standing under the ADA to seek injunctive relief.

Plaintiff has also established that injunctive relief is appropriate. As discussed above, plaintiff's allegations, which are assumed to be true in light of defendants' default, establish defendants' liability pursuant to § 12182(b)(2)(A)(iv). The ADA explicitly provides that "[i]n the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). I therefore recommend that the Court issue an injunction tailored to accomplish that result.

Plaintiff has requested injunctive relief in the form of an order requiring defendants to correct the architectural barriers identified by plaintiff's pre-litigation inspector, Mr. Egilmez. Pl.'s Mem. at 5; *see also* Egilmez Decl. ¶¶ 5, 6. Plaintiff further seeks an injunction ordering that the modifications recommended by Mr. Egilmez be implemented "before the café may be reopened for commercial use as a place of public accommodation." Pl.'s Mem. at 5. While this suggests that the Court should order the U.S. Marshals to shut down the café until the necessary modifications are made, plaintiff has failed to provide the Court with any suggestion about how long it would take to make the modifications. Nor is it readily apparent how closing the café will

provide plaintiff, or anyone else for that matter, greater access to the restaurant while the repairs are made. *See Taylor v. 312 Grand Street LLC*, 2016 WL 1122027, at *4 (E.D.N.Y. Mar. 22, 2016) (denying plaintiff's request for an order requiring the defendants to make the modifications "before the [p]roperty may be reopened for commercial use").

Instead, having considered the nature of the violations claimed by plaintiff, the nature of the relief required to afford redress, and the common practice in this district for awarding injunctive relief in ADA cases,[1] I recommend that the Court issue an injunction requiring defendants to prepare architectural plans remedying the violations of the ADA Accessibility Guidelines identified by Mr. Egilmez and to provide plaintiff's counsel with those plans for review within 60 days of any order adopting this Report and Recommendation. In the event defendants fail to do so, I recommend the injunction require defendants to implement the suggested modifications identified by Mr. Egilmez. *See* Egilmez Decl. ¶ 5. I recommend in addition that the injunction provide plaintiff with thirty (30) days to file a motion seeking relief on the basis that defendants' proposed architectural plans are inadequate to remedy the ADAAG violations identified by Mr. Egilmez. I recommend further that the injunction require defendants to implement the architectural plans and remedy the violations within sixty (60) days of either plaintiff's agreement or a ruling by the court that the plans are adequate.

2. *Attorneys' Fees, Litigation Expenses, and Costs*

Plaintiff seeks to recover $6,800 in attorneys' fees and $2,250 in costs and litigation expenses incurred during the prosecution of this case.[2] Pl.'s Mem. at 7-8. The ADA allows a

---

[1] *See, e.g.*, *Taylor*, 2016 WL 1122027, at *4; *Beach 90th Street Realty Corp.*, 2013 WL 6835157, at *5; *Shariff v. Alsaydi*, 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013).

[2] Despite requesting $6,800 in attorneys' fees, Pl.'s Mem. at 8, and $2,250 in costs and litigation expenses, *id.* at 9, plaintiff seeks a "total [of] $7,250 plus supplemental process serving costs." *Id.* This discrepancy is immaterial, however, in light of my recommendation to defer decision on the plaintiff's motion for attorneys' fees until a later date. *See infra*.

prevailing party to recover reasonable attorneys' fees and litigation costs. *See* 42 U.S.C. § 12205. Having obtained a default judgment against defendants, plaintiff is a prevailing party eligible to recover attorneys' fees and costs. *See, e.g.*, *Santiago v. Coco Nail HB, Inc.*, 2012 WL 1117961, at *2 (E.D.N.Y. Mar. 16, 2012) (awarding attorneys' fees to plaintiff granted default judgment on ADA claim).

### a. Attorneys' Fees

Plaintiff has submitted contemporaneous time records to support his fee application, thus complying with *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). According to these records, plaintiff's attorney, Tara Demetriades, billed a total of seventeen (17) hours at a rate of $400 per hour litigating this case, resulting in a total fee of $6,800. Pl.'s Mem. at 8; Decl. of Tara Demetriades ¶6, Docket Entry 14-1 ("Demetriades Decl."); Attorney Time Sheet, Docket Entry 14-7.

A reasonable attorneys' fee may be calculated by considering "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 188-90 (2d Cir. 2008). Whether an attorney's hourly rate is reasonable is determined by considering what a reasonable paying client would be willing to pay. *Arbor Hill*, 522 F.3d at 193.

When retained at an hourly rate in this jurisdiction, plaintiff's counsel, who appears to be a solo practitioner, customarily charges $400 per hour for Title III ADA claims. Demetriades Decl. ¶ 6. Plaintiff's contention that an hourly rate of $400 is "presumptively reasonable," Pl.'s Mem. at 7, however, is unsupported by the case law. In fact, "an hourly rate of $400[] . . . is higher than the standard range of attorneys' fees for similar actions in this district." *Cankat v.*

*Vanilla Café Pastry Garden*, 2016 U.S. Dist. LEXIS 16480, at *3 (E.D.N.Y. Jan. 19, 2016), *adopted by* 2016 U.S. Dist. LEXIS 31724 (E.D.N.Y. Mar. 11, 2016); *see also Brown v. Green 317 Madison, LLC*, 2014 WL 1237448, at *10 (E.D.N.Y. Feb. 4, 2014) (finding an hourly rate of $350 in an ADA case reasonable for a partner's time); *Alsaydi*, 2013 WL 4432218, at *5 (finding a $325 hourly rate appropriate for a solo practitioner with over a decade of experience in civil rights litigation); *Whitney v. JetBlue Airways Corp.*, 2009 WL 4929274, at *7 (E.D.N.Y. Dec. 21, 2009) (observing that the rates applied in this district have "ranged widely depending on the nature of the firm, the experience of the lawyer[,] and the type of case," and awarding $350 per hour for a partner with almost thirty years' experience).

Although she asserts that she has been involved in "a multitude of ADA cases both within and outside the state of New York," Pl.'s Mem. at 7, plaintiff's counsel fails to cite a single case where she has been awarded fees at $400 per hour. Instead, plaintiff cites *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010). The plaintiff's attorney in that case was indeed awarded fees at an hourly rate of $400, but he also had over twenty-five years' experience as a lawyer and had handled roughly 180 civil rights cases in the Eastern District and another 20 in the Southern District since starting his own law firm in 1987. *Id.* at 301. Moreover, the court described counsel's performance in *Luca* against a "tenacious adversary" as "outstanding," and the result obtained for his client as "extremely favorable." *Id.* Plaintiff's counsel also cites *Mary Jo C. v. Dinapoli*, 2014 WL 7334863 (E.D.N.Y. Dec. 18, 2014). There, however, although counsel sought fees at an hourly rate of $450, the court awarded only $350 per hour for a senior attorney on the case with more than thirty years' experience representing people with disabilities. *Id.* at *6. While it is true that plaintiff's counsel has been a practicing

9

litigation attorney for approximately seventeen years, it appears that she has only four years of experience in ADA litigation since opening her own law firm in 2012. Pl.'s Mem. at 7.

At any rate, I am persuaded that it is premature at this point in the litigation to decide the appropriate amount to award as attorneys' fees. Earlier this year, the Honorable Brian M. Cogan considered a similar case brought by present plaintiff's counsel with a nearly identical procedural posture and history.[3] *See Taylor*, 2016 WL 1122027. In his decision, Judge Cogan specifically mentioned by name the plaintiff in the instant case, along with the fact that Mr. Cankat has filed 38 ADA cases in this district during the last two years,[4] and openly questioned the purpose for such extensive litigation. Concerned that "the motivation behind the case is too much about attorneys' fees and too little about achieving a meaningful benefit for her client," *id.* at *1, Judge Cogan decided to defer the issue of fees "until such time as plaintiff can demonstrate that he has made a reasonable effort to obtain compliance with the injunction." *Id.* at *6.

At least one other judge of this Court has expressed similar concerns. *See Beach 90th Street Realty Corp.*, 2013 WL 6835157, at *7 (Bloom, Mag. J.) ("Plaintiff and his counsel have commenced seventeen ADA actions in this district alone. Courts throughout the country have raised concerns about this type of serial ADA litigation to take advantage of the statute's attorney's fees provision."). My apprehension in this case is heightened by the fact that, in the six months since Judge Cogan issued his decision in *Taylor*, plaintiff has not filed any documentation whatsoever demonstrating reasonable efforts to seek compliance with the injunction issued in that case. Nor has his attorney, Ms. Demetriades, renewed her application

---

[3] Like plaintiff in this case, the *Taylor* plaintiff also failed to comply with multiple court orders and filing deadlines, leading the court to "order[] plaintiff to show cause why sanctions should not be imposed or the case dismissed for failing to comply with its Order." *Taylor*, 2016 WL 1122027, at *2.

[4] Based on a recent online search of the dockets in the Eastern District of New York, that number has risen to 44 cases, almost all of which have been brought by Ms. Demetriades, plaintiff's counsel in the instant matter.

10

for attorneys' fees. *See* Docket Report, *Taylor v. 312 Grand Street LLC*, ECF No. 15-CV-5410 (BMC).

To ensure that counsel actually makes some effort to achieve something for her client other than merely obtaining a paper judgment, I recommend that the method developed by Judge Cogan be adopted, and that the issue of attorneys' fees be deferred until such time as plaintiff can demonstrate that he has made a reasonable effort to obtain compliance with the injunction recommended above. *See Taylor*, 2016 WL 1122027, at *6. Plaintiff need not obtain a particular level of compliance to be entitled to attorneys' fees; a reasonable effort of compliance should be sufficient. At that time, plaintiff's counsel should consider curing the deficiencies in her present request for attorneys' fees by demonstrating a reasonable hourly rate for similar actions in this district.

Since plaintiff's attorney will hopefully expend some degree of effort to effect compliance with the injunction, the hours devoted to those efforts, to the extent they are reasonable in scope, may also be included in the renewed application for attorneys' fees. I recommend that any such application for attorneys' fees be made within a reasonable time after the entry of the injunction, and in light of the difficulties plaintiff's counsel may face in enforcing an injunction against the defaulting defendants, I further recommend that the 14-day time period in Fed. R. Civ. P. 54(d) be waived. *See Taylor*, 2016 WL 1122027, at *7.

### b. Costs

Finally, plaintiff also seeks to recover litigation-related costs in the amount of $2,250, including a $400 filing fee, a $500 fee for the "preparation of [the] Violations' List" by Mr. Egilmez; $1,000 for the cost of an "expert report prepared detailing all purported ADA Title III violations," and "overhead charges during course of litigation totaling $350." Pl.'s Mem. at 9.

11

Plaintiff also seeks reimbursement for "charges relating to service of process," *id.*, as well as "approximately $50 in mailing and other miscellaneous related costs." Demetriades Decl. ¶ 9. Plaintiff's expenditure of $400 on filing is verified by the docket, and the $1,500 for the expert report and violations list is verified by plaintiff's submissions. *See* Demetriades Decl. ¶ 9 Exs. 1 and 2, Docket Entries 14-5 and 14-6. Plaintiff has not, however, submitted receipts to verify the other charges for which he seeks reimbursement. I therefore respectfully recommend that plaintiff be awarded costs in the amount of $1,900. I recommend further that in any renewed application for attorneys' fees, plaintiff be permitted to cure any deficiencies in his present motion by providing adequate supporting documentation for his costs and litigation-related expenses.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that defendants be found liable for violating Title III of the ADA, 42 U.S.C. § 12182. I further recommend that an injunction issue with the terms described above. I recommend in addition that plaintiff's request for attorneys' fees be temporarily denied and that it may be renewed within a reasonable time and only upon a showing that a reasonable effort to obtain compliance with the injunction has been made. Finally, I recommend that plaintiff be awarded $1,900 in costs and litigation expenses.

Any objections to the recommendations made in this Report must be submitted within fourteen (14) days after filing of the Report and, in any event, no later than October 14, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.

                                                  SO ORDERED.

                                                      /s/

                                     **Steven M. Gold**
                                     **United States Magistrate Judge**

September 27, 2016
Brooklyn, New York

U:\ZAK 2016-2017\Cankat v. Noisette Cafe (15cv4730)\R&R - FINAL.docx